## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **TAMMY SCARFE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION FILE NO.** _____ |
| | ) | |
| **v.** | ) | |
| | ) | |
| **NEENAH PAPER, INC.** | ) | |
| **(nka Neenah, Inc.),** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## ORIGINAL CLASS ACTION COMPLAINT

Plaintiff, Tammy Scarfe ("Scarfe"), on behalf of herself, and other similarly situated individuals, alleges the following, in relevant part, upon information and belief and her own personal knowledge. This Original Class Action Complaint is brought against the Defendant, Neenah Paper, Inc. (nka Neenah, Inc.) ("Neenah") to recover benefits under the Employee Retirement Income Security Act of 1974 ("ERISA") (29 U.S.C. §§ 1001 *et seq*.), for breach of unilateral contract, for breach of fiduciary duty and fraud, and punitive damages.

1

## INTRODUCTION

On December 31, 2018 Neenah sold the assets of its Brattleboro, Vermont facility to Long Falls Paper, LLC and involuntarily terminated, in a group termination, its Brattleboro employees. Pursuant to the Neenah Paper Severance Pay Plan Section § 3.2 it was required to pay severance to Scarfe and its other employees. It did not. This class action is brought to recover the severance pay for Scarfe and the other employees.

## THE PARTIES

1.      Plaintiff Tammy Scarfe ("Scarfe") is a natural person, who resides in and is a citizen of the State of Vermont.

2.      Defendant Neenah, Inc. ("Neenah") is a Delaware corporation, whose address is 3460 Preston Ridge Road, Suite 600, Alpharetta, Georgia 30005, and operates throughout the United States.

3.      Neenah was qualified to and did business in Georgia and Vermont during 2018.

4.      Defendant Neenah is an "employer" within the meaning of ERISA as amended.

5.      The Neenah Severance Pay Plan of Defendant Neenah is an employee welfare benefit plan within the meaning of Section 3(1) of ERISA, as amended.

2

6.     Defendant Neenah functions as the "Plan Administrator" for the Neenah Severance Pay Plan within the meaning of ERISA, as amended.  Through the "Plan Administrative Committee," the Defendant Neenah functions as a fiduciary for the Neenah Severance Pay Plan within the meaning of ERISA, as amended.

## JURISDICTION AND VENUE

7.     Plaintiff invokes the jurisdiction of this Court pursuant to Employee Retirement Income Security Act of 1974 (29 U.S.C. §§ 1001 et. seq.) as amended.

8.     Venue is proper in this Court as the Defendant resides and the Neenah Severance Pay Plan is administered from this District.  29 U.S.C. § 1331(e)(2) and 28 U.S.C. § 1391(b).  Moreover, the Plan § 6.3 - Applicable Law specifies the Federal Court "located in or embracing … Fulton County, Georgia."

## FACTUAL ALLEGATIONS

9.     Neenah originally established the Plan, as the Neenah Paper Severance Pay Plan,  effective December 1, 2004, and was last amended and restated as the Neenah Severance Pay Plan, on January 1, 2009 (the "Plan") (Attached and incorporated herein as Exhibit A).

10.     The effective date of the amendment and restatement of the Plan is April 1, 2017.  The original effective date of the Plan is December 1, 2004. (Plan § 1.2).

11.     The purpose of the Plan is to provide temporary income replacement to Eligible Employees who are involuntarily terminated by Neenah. (Plan § 1.4).

12.     Effective August 1, 2015, a subsidiary of Neenah acquired all the outstanding equity interests of ASP Fibermark, LLC ("Fibermark"). In connection with that transaction, otherwise eligible employees of Fibermark North America, LLC (formally known as Fibermark North America, Inc.) became eligible for the Plan effective August 1, 2016.  This acquisition included the Brattleboro, Vermont ("Brattleboro") facility.

13.     Fibermark, reincorporated upon acquisition as Neenah Northeast, LLC, was a New Participating Employer under the Plan.  (Plan § 2.14, § 2.16, and Plan Exhibit A.)

14.     Scarfe became a Fibermark employee on June 26, 1981;  she was an at will employee in good standing. Upon August 1, 2015 she became a full-time at-will employee of Neenah in the payroll department at Brattleboro.  At the same time other Class Members also became full-time employees of Neenah.

4

15.    Upon Scarfe's employment with Neenah, as with the other Class Members, she and they became Participants and Eligible employees of the Plan. (Plan § 2.15 and § 2.8, respectively).

16.    At the time of her employment with Neenah, Scarfe had more than twenty-six (26) years of employment with Fibermark.   Other Class Members may have differing years of employment with Fibermark, but those are known by the Defendant.

17.    Pursuant to the Plan § 2.21 – Prior Employer Service Credit, Scarfe was provided a thirty-four (34) year Prior Employer Service Credit for each year of her previous employment at Fibermark. (Plan § 2.25(C) – Years of Service).   Other members of the class who had been employed by Fibermark also received Prior Employer Service Credits in varying amounts, which are known by the Defendant.

18.    The amount of severance payable under the Plan is equal to one (1) week of Base Salary per Year of Service to a maximum of twenty-six (26) weeks of Base Salary.   (Plan § 4.1(A).   Therefore, upon her involuntary termination on December 31, 2018, Scarfe was eligible for and qualified for twenty-six (26) weeks of Base Salary severance pay; other Class Members may qualify for differing number of weeks based on years of service, but those are known by the Defendant.

19.     In late 2017 Neenah decided to sell or close Battleboro.  After a failed attempt to sell Brattleboro to HM Paper Company,  Neenah decided to close Brattleboro.   On October 25, 2018 Neenah issued a Worker Adjustment and Retraining Notification ("WARN") under 29 U.S.C. § 2101 et seq., which required Neenah to provide sixty (60) days notice of a plant closing or a mass termination.

20.     Nevertheless, Neenah remained open to a sale of Brattleboro. In early November 2018 it found a buyer for Brattleboro.  On November 13, 2018 it entered into an agreement (the "Agreement")  with Long Falls Paperboard, LLC[1]  ("Long Falls") to sell the Brattleboro assets for $5 million, to close on December 31, 2018.

21.     The Agreement did not require Long Falls to hire any of the Neenah employees, nor, if it did hire them, did it require Long Falls offer the employees the same job, salary, or benefits.

22.     On December 31, 2019 Neenah involuntarily terminated Scarfe and the other Brattleboro employees.

23.     The Plan provides:  "Each Participant who has a Termination of Employment as a result of an involuntary termination by a Participating Employer shall receive Severance Pay. . . " (Plan § 3.2).

---

[1] Long Falls was a newly created LLC for the purpose of the purchase of Brattleboro assets, by a group of investors.

6

24.     As defined by the Plan § 2.12 (A) on December 31, 2018 Neenah had conducted a group termination of Scarfe and the Class Members; which date is their Termination Date under the Plan § 2.23.

25.     The Plan provides an exception to Plan § 3.2 under § 3.2(E) when one's ". . . employment is terminated as part of a Group Termination for which the Company [Neenah] offers a special severance package in connection with that Group Termination. . . "

26.     If offered by Neenah the "special severance package" had to be a severance plan that conformed with Section 3(1) of ERISA. Plan §1.3.

27.     At no time did Neenah offer Scarfe and/or the Class Members a "special severance package" pursuant to the Plan §3.2(E).

28.     Nor were Scarfe and the Class Members paid severance in accordance with the Plan §3.2(E) or a "special severance package".

29.     Pursuant to the Plan § 5.8 (A) on October 26, 2020 Scarfe filed a Claim for severance with Neenah.  Attached as Exhibit B is a copy of her Claim.  It was received and signed for by Neenah on November 2, 2020. Exhibit B-1.

30.     The Plan requires Neenah to respond to the Claim within ninety (90) days.  Plan § 5.8 (C)(1).

31.     Neenah did not respond.  Therefore, according to 29 C.F.R. § 2560.503-1(l)(1) the "claimant *shall be deemed to have* <u>*exhausted the administrative remedies*</u> *available under the plan* and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim."  (Emphasis added.)

## CLASS ACTION ALLEGATIONS

32.     This action is brought as a Class Action under Federal Rules of Civil Procedure – Rule 23.

33.     Plaintiff proposes the following class, defined as follows, subject to modification by the Court as required.

> *All individuals employed at the Brattleboro, Vermont facility by Neenah, Inc. and/or its subsidiary, Neenah Northeast, LLC, during 2018 who were participants and eligible under the Neenah Severance Pay Plan ("Plan") as amended and who were involuntarily terminated on December 31, 2018 and not paid severance in accordance the Plan.*

34.     The named Plaintiff falls within the Class definition and is a member of the Class.

### A.  <u>Certification Under Either Rule 23(b)(2) or (b)(3) is Proper</u>.

35.     The members of the class are capable of being described without managerial or administrative problems.

36.    The members of the Class are readily ascertainable from the information and records in the possession of Neenah.

37.    **Numerosity:**   On information and belief the Class is composed of twenty (20) putative class members.   Claims are relatively small, ranging from $10,000 to $50,000 each.   The class members reside outside this Court's jurisdiction, and most are of limited means; they cannot economically seek legal redress for the wrongs complained of herein. For these reasons, joinder of all Class Members is impracticable.

38.    **Commonality:**   Questions of law and fact are identical and common for all members of the Class except for the exact amount of each member's claim, which is readily determined.   These predominate over any questions solely affecting individual members of the Class, including but not limited to:

a. Whether Neenah involuntarily terminated the Class members on December 31, 2018 and now owe severance to the Class members under the Plan § 3.2.

b. Whether Neenah's promises constituted an offer of a unilateral contract, which Neenah breached by not paying severance to the Class members upon their performance.

c. Whether Neenah committed fraud and breached its fiduciary duty.

    d.  Whether Neenah's conduct was outrageous, done with actual malice, and in willful and reckless disregard for the rights of Scarfe and the Class Members.

39.  **Typicality:**  Plaintiff's claims are typical of the Class.  The exact amounts of severance due each Class Member vary but are known or can be formulaically calculated.  Otherwise, the legal and factual basis for each Class Member's claim is identical to Scarfe's.  Similarly, Defendant's defenses are and will be typical of and the same or identical for Scarfe and each of the Class Members and will be based on the same legal and factual theories. There are no unique defenses to any of the Class Members' claims.

40.  **Adequacy:**  Plaintiff is a member of the Class and will fairly and adequately protect the interests of the Class Members.  She has no interests antagonistic to the Class and has retained counsel experienced in class action litigation.

41.  The principal questions in this matter are (1) did Neenah fail to pay severance in accordance with the Plan? (2) did Neenah breach the unilateral contract? (3) did Neenah commit fraud and breach its fiduciary duties? (4) And did Neenah's conduct rise to a level that must be regarded as outrageous, done with

actual malice, and in willful and reckless disregard for the rights of Scarfe and the Class Members?

42.    Class Members do not have an interest in pursuing separate individual actions against the Defendant as each Class Member's individual claim is relatively small compared to the expense and burden of individual prosecution.   Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments.   Moreover, management of this class action as class action will not present any likely difficulties.   In the interest of justice and judicial efficiency it would be desirable to concentrate the litigation of all Class Members' claims in a single action.

43.    Plaintiff intends to send notice to all Class Member to the extent required by the Federal Rules of Civil Procedure.   The names and addresses of the Class Members are available from the Defendant's records, as well as are known by the Plaintiff.

44.    A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class Members in individually controlling the prosecution of separate claims against the Defendant is small.   Management of these claims present significantly fewer difficulties than those presented in many class claims.

## FIRST CLAIM FOR RELIEF
## <u>SEVERANCE PAY PURSUANT TO THE PLAN §3.2</u>

45.     On December 31, 2018 Neenah sold the Brattleboro assets to Long Falls Paperboard, LLC ("Long Falls") pursuant to an asset sale agreement dated November 13, 2018.

46.     As a result of the sale of assets Neenah involuntarily terminated Scarfe and the other Class Members on December 31, 2018.

47.     The Plan recognizes an employee separation of this sort as a "Group Termination" under § 2.12(A).

48.     Scarfe and other employees were hired by Long Falls on or after January 2, 2019.

49.     Neenah failed to pay Scarfe and the other class members severance in accordance Plan § 4.1(A) as required by Plan § 3.2.

50.     Pursuant to the unambiguous terms of the Plan, after involuntarily terminating Scarfe and the other Class Members, Neenah *must* pay severance in accordance with Plan § 4.1(A) pursuant to the Plan § 3.2.

51.     As a direct result of Neenah not paying severance pursuant to the Plan § 3.2, Scarfe and the Class Members have been damaged in an amount that will be proven at trial but is herein alleged to total for the Class approximately $750,000.

## SECOND CLAIM FOR RELIEF
## FOR BREACH OF UNILATERAL CONTRACT

53.     On October 25, 2018 Matthew Duncan, Senior Vice President and Chief Human Resource Officer ("Duncan"), held a meeting of Brattleboro employees, including Scarfe, where he advised of Neenah's intent to close Brattleboro on December 31, 2018 and issued the WARN.

53.     At that meeting, in order to retain its employees, Duncan, acting on behalf of Neenah, promised to pay severance [2] in accordance with the Plan to Scarfe and the Class Members if they remained employed with Neenah through December 31, 2018.

54.     The October 25, 2018 promises of Duncan constituted an offer of a unilateral contract to Scarfe and the Class Members.

55.     Scarfe and the employees accepted the offer by continuing their employment with Neenah through December 31, 2018 in full performance of the unilateral contract.

56.     Once Scarfe and the Class Members accepted the unilateral contract via their performance, Neenah could not unilaterally abandon or change its terms.

---

[2] Duncan also promised to pay unused vacation pay.  However, vacation pay is not a benefit under the Plan, therefore the Plaintiff does not seek vacation pay in this ERISA class action.

57.     Upon December 31, 2018 Scarfe and the Class Members had performed and the unilateral contract became binding.

58.     Neenah's failure to pay severance to Scarfe and the Class Members constituted a breach of the unilateral contract and Neenah was liable to pay severance.

59.     As a direct result of Neenah not paying severance pursuant to the terms of the unilateral contract, Scarfe and the Class Members have been damaged in an amount that will be proven at trial but is herein alleged to total for the Class of approximately $750,000.

**THIRD CLAIM FOR RELIEF**
**BREACH OF FIDUCIARY DUTY, CONSPIRACY TO DEFRAUD, AND**
**DEMAND FOR PUNITIVE DAMAGES UNDER ERISA §502(a)(3)**

60.     In the Agreement - Section 5(c) Neenah admitted it was obligated to pay Severance Pay as defined in Plan §2.22[3] to Scarfe and the Class Members on December 31, 2018.

61.     However, Neenah said it interpreted Plan §3.2 subsection (E): "does not preclude the possibility of Neenah's offer of a [special] severance package being effected through a third party. . ."

---

[3] Plan §2.22 defines "Severance Pay" as" "Payment made to a Participant pursuant to Article IV hereof.

62.    Neenah then claimed it had "negotiated" Section 5(c) with Long Falls.

63.    Neenah further claimed that Section 5(c) was an offer by Long Falls of a special severance package pursuant to § 3.2(E) to the Brattleboro employees that absolved Neenah of its obligation to pay Severance Pay.

64.    The term "special severance package" in Plan § 3.2(E) is not defined.

65.    The following is a true and complete quotation of Section 5(c) in its entirety:

> (c) Purchaser's Plans.  Effective immediately before Closing, the Seller [Neenah] shall terminate the employment of any individual who is then a Company Employee.  No later than one day after the Closing Date [December 31, 2018], Purchaser [Long Falls] *shall make offers of employment* to substantially all of the Company Employees, consistent with Purchaser's obligations under the Collective Agreement as applicable, and Purchaser further agrees to pay for the *severance obligations* of any Company Employee *not offered employment* by Purchaser pursuant to this Section 5.3(c).  (Emphasis added.)   Section 5(c) page 24 of the Purchase Agreement between Neenah Northeast, LLC and Long Falls Paperboard, LLC., Dated November 13, 2018.

66.    On information and belief, Neenah had suffered significant losses at Brattleboro, which it wished to minimize.

67.    It acquired Brattleboro for approximately $25 million on August 1, 2015 and sold it on December 31, 2018 for $5 million, a $20 million loss.

68.    Brattleboro operated at a significant loss during its tenure with Neenah.

69.    Avoiding the payment of severance, some $750,000, represented a significant avoidance of expense and further loss.

70.    On information and belief, Long Falls, was formed by a group of undercapitalized investors looking to purchase an operating paper plant with experienced employees "on the cheap".[4]

71.    Thus, the investors were willing to cooperate with Neenah in negotiating the "Agreement" to provide terms solely favorable to Neenah, so long as those terms did not adversely subject them to increased cost or liability.

72.    On information and belief, Neenah knew the investors were not willing to assume Neenah's obligation to pay Severance Pay to the Brattleboro employees.

73.    Neenah was a Plan administrator and fiduciary. Plan §§ 5.1 and 5.12; ERISA § 3(21); 29 U.S.C. § 1002(21).

74.    Neenah had a fiduciary duty to Scarfe and the Class Members under ERISA § 404(a)(1); 29 U.S.C. § 1104(a)(1).

75.    ERISA required Neenah to act in accordance with the documents and instruments governing the Plan per ERISA § 404(a)(1)(D); 29 U.S.C. § 1104(a)(1)(D).

---

[4] Indeed, in April 2019, just four months after closing, Long Falls became insolvent.

76.     Nevertheless, Neenah sought to avoid paying the Brattleboro employees Severance Pay, so Neenah, in breach of its fiduciary duty, conspired with Long Falls to defraud Scarfe and the Class Members of their rightfully earned and eligibility to Severance Pay.

77.     In furtherance of its fraud and in violation of its fiduciary duties, Neenah drafted Section 5(c) to set up a false contractual basis to fraudulently claim it had transferred its obligations to pay Severance Pay to Long Falls.

78.     Neenah and Long Falls knew Section 5(c) had not created a "special severance package".

79.     As proof:

Section 5(c) does not refer to Plan §3.2(E) or mention a "special severance package", indeed, the only reference to "severance" is in regard to Neenah's admitted "severance obligation".

80.     Neenah never provided a copy of Section 5(c) to Scarfe and the Class Members, nor otherwise told them of it.

81.     Neither Neenah nor Long Falls provided the Brattleboro employees a Summary Plan Description ("SPD") of the "special severance package" as required by 29 CFR § 2310.3-1(b)(2).

82.     Nor did Neenah or Long Falls ever file Form 5500 - Annual Return/Report of Employee Benefit Plan regarding the "special severance package" as required by the Internal Revenue Service.

83.     Section 5(c) did not transfer Neenah's Severance Pay obligations to Long Falls, which both Neenah and Long Falls knew at the time of negotiating, drafting, and executing the Agreement.  As proof of Neenah's fraud:

84.     Section 5(c) was fraudulent because it only required Long Falls to pay Brattleboro employees severance in the *single instance* that it *failed to offer* one or more of them employment.

85.     Neither the Agreement nor Section 5(c) imposed any conditions of what type of employment Long Falls was required to offer the Brattleboro employees, *i.e.*, it did not require Long Falls to offer Brattleboro employees their existing job, salary, or benefits.  Nor did it require any term of employment.  Long Falls only offered at-will employment to the Brattleboro employees.

86.     Section 5(c) was fraudulent because both Neenah and Long Falls reasonably knew Long Falls would *always* offer employment rather than incur many thousands of dollars in cost and liability to pay an "*unoffered*" employee Severance Pay.

87.     Section 5(c) is also fraudulent because Long Falls was not contractually liable or required to Pay Severance under the Agreement to a Brattleboro employee who after being *offered* employment chose *not* to work for Long Falls.

88.     Long Falls knew there was no risk in offering employment, because shortly thereafter it could terminate the employee and avoid any Severance Pay liability.

89.     Neenah and Long Falls knew Section 5(c) was constructed so that Long Falls would *never pay* any Brattleboro employees Severance Pay *nor would it ever incur* a liability for Neenah's severance obligations, yet Neenah used it to fraudulently allege it had transferred its Severance Pay obligations to Long Falls.

90.     Long Falls never paid Severance Pay to any Brattleboro employee.

91.     Neenah fraudulently maintained to Scarfe and the Class Members that because they had been hired by Long Falls it was no longer required to pay them Severance Pay.  Neenah knew this to be false. See Neenah's admission of it severance obligation in Section 5(c).

92.     As a direct result, whether Scarfe and the Class Members became employees of Long Falls or not, they were defrauded of their Severance Pay, just as Neenah intended.

93.    Neenah's fraudulent negotiation and creation of Section 5(c) and its resulting fraudulent refusal to pay Severance Pay was a breach of its fiduciary duty to Scarfe and the Class Members under ERISA § 404(a)(1); 29 U.S.C. § 1104(a)(1).

94.    Neenah's fraudulent creation of Section 5(c) not only violated the equitable principles of ERISA, but also violated the non-forfeiture provision of ERISA 29 U.S.C. § 1053(2)(a)(ii), which applies to welfare benefit plans. Plan § 1.3.

94.    Neenah's breach of fiduciary duty and its conspiracy with Long Falls to defraud Scarfe and the Class Members by constructing Section 5(c) entitles them to severance pay plus punitive damages.  ERISA §502(a)(3); 29 U.S.C. §1132(a)(3). *See CIGNA Corp. v. Amara*, 131 S.Ct. 1866, 1880 (holding that a surcharge is an "appropriate equitable remedy for the plaintiff, as long as she in fact established a breach of fiduciary duty"); *see also McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176, 181 (4th Cir. 2012)  applying *Amara*; *Prolow v. Aetna Ins. Co.*, 2021 Dist. Ct. LEXIS 24712, 2021 WL 24712 (S.D. Fla.) (citing *McCravy*); and *Pierce v. Wyndham Worldwide Operations, Inc*., 2018 U.S. Dist. LEXIS 232777, 2018 WL 10231079 (N.D. Ga,), Citing *McCravy*.

95.    The Agreement and all actions regarding Neenah's and Long Falls' fraudulent conspiracy took place in the State of Vermont.

96.     Neenah calculated that Brattleboro employees would unlikely pursue their severance claims, because of the high cost and venue of the litigation. Therefore, its denial of Severance Pay and its fraudulent construction of Section 5(c) was malicious and intentionally oppressive.

97.     Neenah's fraud and conduct was outrageous, done with actual malice, and in willful and reckless disregard for the rights of Scarfe and the Class Members.

98.     The purpose of punitive damages is to "punish conduct which is morally culpable . . . [and] to deter a wrongdoer . . . from repetitions of the same or similar action." *Coty v. Ramsey Assocs., Inc*., 149 Vt. 451, 467, 546 A.2d 196, 207 (1988) (quoting *Davis v. Williams*, 402 N.Y.S 2d 92, 94 (N.Y. Civ. Ct. 1977). *See also Brueckner, supra.*

99.     There is no dispute of material facts.  Scarfe and the Class Members are entitled to severance in an amount to be determined at trial but is herein alleged to be $750,000, and they are entitled to punitive damages for Neenah's fraud, malice, and breach of its fiduciary duty pursuant to ERISA §502(a)(3); 29 U.S.C. §1132(a)(3).  *McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176, 181 (4th Cir. 2012) applying *CIGNA Corp. v. Amara*, 131 S.Ct. 1866, 1880; and see *Prolow* and *Pierce, supra.*

100.   For these reasons, Severance Pay must be awarded and as well as punitive damages.   O.C.G.A. §51-12-5.1(b) and *City of Monroe v. Jordon,* 201 GA App. 332, 334-335 (1991); See also *Brueckner, supra.*

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Tammy Scarfe respectfully requests that this Court enter judgment in her favor and the class and against the Defendant, Neenah, Inc. for the following:

a.  Designate Plaintiff's counsel as counsel for the Class;

b.  Issue proper notices to the Class;

c.  Pay severance the amount owed to each individual Class Member pursuant to the Plan;

d.  Prejudgment Interest from December 31, 2018 at the rate of 12% per year on the amount owed each individual Class Member for unpaid severance pay;

e.  Punitive Damages pursuant to ERISA § 502(a)(3); 29 U.S.C. § 1132(a)(3);

f.  Attorney's fees, litigation expenses and costs; and

g.  Such other and further relief as this Court deems proper under the circumstances.

Dated: March 3, 2021                    Respectfully submitted,

/s/ *Leslie M. Bassett*
Leslie M. Bassett, Esq.
Georgia Bar No. 477037

PRIDGEN BASSETT LAW
138 Bulloch Ave.
Roswell, Georgia 300075
(404) 844-5884 direct
(678) 812-3654 facsimile
leslie@pridgenbassett.com

*COUNSEL FOR PLAINTIFF*